[No. 3084.]

WALTER KENNEDA *v.* THE STATE.

1. THEFT—PRACTICE—CHARGE OF THE COURT—POSSESSION OF RECENTLY STOLEN PROPERTY.—It is a well settled rule of practice that the charge of the court should submit the law affirmatively upon every legitimate phase in which the evidence might be considered by the jury, and upon all the issues raised by the proof. And when there is a doubt as to whether an issue is or is not directly made by the evidence, the better practice is to solve the doubt by charging the law with reference to it. But see a state of proof whereunder, in the absence of a requested charge, the omission of the court to charge the law applicable to the defendant's explanation of his possession of stolen property before it was questioned was not reversible error.

2. SAME—CIRCUMSTANTIAL EVIDENCE.—Omission to charge the law of circumstantial evidence, when the State relies alone upon that character of evidence, is fatal error.

APPEAL from the District Court of Mitchell. Tried below before the Hon. T. B. Wheeler.

The indictment charged the appellant with the theft of a coat of the value of twenty dollars, the property of W. H. Snyder, in Mitchell county, on the seventh day of December, 1883. The trial resulted in the conviction of the defendant, and the jury assessed his punishment at confinement in the penitentiary for the term of two years.

G. H. Colvin was the first witness for the State. He testified

that he lived in the town of Colorado, Mitchell county, Texas. During the latter part of the year 1883, the witness was a clerk in the dry goods and clothing store of Snyder, Craig & Co., in Colorado, Texas. The firm of Snyder, Craig & Co. was composed of W. H. Snyder, B. F. Craig and T. E. McDevitt. Craig died in August or September, 1883, and the business was conducted by W. H. Snyder and T. E. McDevitt until January, 1884. One morning, early in December, 1883, the witness hung a number of articles of clothing in front of the store, as signs, among them a certain overcoat. The witness had no recollection of noticing that overcoat during the day, after he hung it out, nor did he miss it until after dark, when he went to take in the various articles hung out as signs. He then saw that the overcoat was gone. The witness had not sold it, and found upon inquiry that it had not been sold, and he immediately notified the sheriff that he thought the coat had been stolen. Several other persons were employed as clerks in the store at the time, and were authorized to sell that coat or any other goods in the store. Mr. Snyder and Mr. McDevitt were both in the store on that day. Mr. Robertson, the book keeper, and Messrs. Harper and Payne, both clerks, were in the store. Witness notified the sheriff of the loss about thirty minutes after he missed the coat. Mr. Parks, the deputy sheriff, brought the same coat back to the store. That coat was worth twenty dollars; was one of a lot of half a dozen held at that price, and of which three or four had been sold at that price. When taken, the coat had been in the house about two months.

The coat that was stolen had been hung out as a sign for several days, and it is possible that it might have caught a little dust, but its value was in no way impaired. The witness did not know who got the coat, nor at what time it was taken. It was a brownish colored wool or cashmere overcoat. It had not been materially injured when it was brought back. The price tag had been taken off, and the lining at the entrance of one sleeve had been ripped or torn a little. The goods belonging to Snyder, Craig & Co., were attached, and were sold under the attachment in bulk in January, 1884. The same stock of goods is now in the same house, and the witness was now engaged in selling them out. That coat, or another of the same lot, is now in the store. The coat described was taken in Mitchell county, Texas, by some one, without the knowledge or consent of the witness.

Harper and Payne, clerks, and Snyder and McDevitt, proprie-

tors of the store, testified substantially to the same facts as those stated by the witness Colvin.

Wayne Parks testified, for the State, that he was deputy sheriff of Mitchell county in December, 1883. He was at that time acquainted with the prosecutors and the defendant. About dark one evening in December, 1883, the witness, having a claim against the defendant for a fine and costs, and hearing that he had packed his valise to leave on that night's train, went to the depot to intercept him. Not finding him at the depot, the witness went to a negro dance that was in progress near by, and found him. It was then seven or eight o'clock. Witness told defendant that he must pay up the fine and cost he was due before he left. He and the defendant were then out of doors, in front of the dance house. Defendant said that he would raise the money, which amounted to between six and ten dollars. He went into the room to see if he could get the money, and on his return presently, said that he had failed. Just then Mr. Hixon stepped up, and defendant proposed to sell Hixon a new overcoat that he was wearing for the money to pay the fine and costs. Hixon, defendant and witness examined the overcoat, and Hixon asked the witness if the coat was worth six dollars and a half. Witness replied that he thought it was. Defendant spoke up and said: "I know it is. I got it from Schwartz, Roas & Co., three or four days ago, and paid thirteen dollars and a half for it." Witness then went with Hixon and defendant to the depot, where Hixon gave the defendant six dollars and a half for the coat, which defendant paid over to the witness. Witness went on back toward the court house, and when he got to Snyder, Craig & Co.'s he heard them say that an overcoat had been stolen from them. Witness went directly back to the depot, arrested the defendant, and got the coat from Hixon. Snyder, Craig & Co. identified the coat and witness left it in the store that night. The defendant had an examining trial next day. Schwartz, Roas & Co., were merchandizing in Colorado at the time of the theft of the coat. Schwartz and Roas both had gone before this trial, and B. Hirsch was the only member of the firm of Schwartz, Roas & Co., residing in Colorado at the time of this trial. The witness did not know how the defendant came in possession of the coat.

An overcoat was exhibited on the trial, which was shown not to be the identical overcoat stolen, but to have belonged to the same lot. Several expert witnesses for the defense testified that

the coat exhibited was not worth more than sixteen or seventeen dollars. Among those so testifying was B. Hirsh, a member of the firm of Schwartz, Roas & Co., who did business in Colorado at the time of the alleged theft. Hirsh testified that on the examining trial he was shown the coat that was stolen, and testified then that the coat was worth twenty dollars or more. He adhered to that testimony. The coat in evidence on the examining trial was superior to the one used in evidence on this trial, and was worth twenty dollars or more. The firm of Schwartz, Roas & Co. had no such coats in stock in December, 1883, and did not sell the defendant any such a coat.

The questions discussed in the opinion, and the sufficiency of the evidence to support the conviction, were the grounds assigned in the motion for new trial.

*Martin & Kennedy,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Under the peculiar circumstances shown by the evidence, we cannot say that it is reversible error that the court omitted, in the absence of a special requested instruction on the subject, to charge the jury with regard to the law applicable to the statement made by defendant before his right of possession of the coat was questioned, to the effect that he had purchased the same of the alleged owners. It is a rule well settled that the charge should submit the law affirmatively upon every legitimate phase in which the evidence might be considered by the jury, and upon all the issues raised by the proof. And when there is a doubt as to whether an issue is or is not directly made by the evidence, it would be the better practice to solve the doubt by charging the law with reference to it.

There is, however, an error of omission apparent in the charge in connection with the evidence, for which the case under the well settled rules of practice must be reversed. All the inculpatory facts proven made the case one of circumstantial evidence, notwithstanding the shortness of the time which elapsed from the theft and the discovery of the stolen property in defendant's possession. Possession of property recently stolen is but itself a circumstance conducing to establish guilt. We find in the charge no instruction to the jury with regard to the law of circumstantial testimony. This error of omission is fatal to the

conviction. (*Allen* v. *The State,* just decided, and authorities therein cited; *ante,* 237.)

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 17, 1884.